CHARLES G. REDFIELD ET AL. *v.* S. D. HEWES ET AL.

FRAUDULENT CONVEYANCE.  *Constructive fraud.  Reimbursement of purchaser.*
    An insolvent sold his stock of goods to certain creditors for $1107.  After-
    wards other creditors filed a bill attacking the sale as fraudulent, and
    the debtor testified that the transfer was a mere pledge, with the privi-
    lege to re-purchase ; that the purpose was to coerce other creditors to
    compromise, and that $400 of the consideration was to be used in effect-
    ing such compromise at fifty cents on the dollar.  Defendants denied all
    fraud, and alleged that the sale was absolute and in good faith.  After
    keeping the stock for nine months and improving it, they sold it for
    $2201, part credit.  Complainant's testimony tended to show that the
    stock was worth $2500 or more, but defendants claimed that its value
    did not exceed $1000.  The court below set aside the sale, and gave a de-
    cree against the purchasers for the amount of complainant's debts, $1453.
    *Held,* error.  The case is assignable to the middle class between actual
    and constructive fraud.  The sale should be set aside, but upon terms
    to do justice.  Cause remanded, with directions to take an account of
    the value of the goods and the amounts paid out by defendants.

FROM the chancery court of the first district of Hinds county.
HON. WARREN COWAN, Chancellor.

One Mallett was in the drug business at Edwards, Miss., and was
involved in debt.  On the 15th day of April, 1885, he executed a
bill of sale of his stock of drugs, etc., to the appellants, Redfield
& Co., merchants of that place, for the expressed consideration of
$1106.95, cash, and the goods were delivered to the purchasers.
Mallett owed Mrs. A. M. Odeneal $600, two years' rent of the
store-house then occupied by him, and he owed her husband, J. H.
Odeneal, a member of the firm of Redfield & Co., $106.95, and
those amounts, aggregating $706.95, were assumed and paid by
Redfield & Co., and they executed their note, payable to Mallett,
December 1, 1885, for $400.  These three amounts made up the
sum of $1106.95, expressed in the bill of sale.  The stock con-
sisted in great part of old goods, and the remnants of several dif-
ferent stocks, the goods having changed hands several times.  On
their purchase, Redfield & Co. went to work to put the stock into
good condition, replenished it with fresh goods, and worked off
through their general store on credit many of the unsaleable

articles. They had a druggist employed, and Redfield, of the firm of Redfield & Co., gave part of his time and attention to the business. They offered the business for sale soon after they bought, but not finding a purchaser they kept the stock about nine months, buying and selling in the usual course, and paying rent, insurance, clerk's hire, etc.—all out of the business.

The note for $400, when executed, was left by Mallett in the hands of one Stam, the bookkeeper of Redfield & Co., with the understanding that it should be credited with amounts for which Mallett was to give his creditors drafts on Redfield & Co., and finally, when paid, to be given up to them. It was stated by Mallett that this $400 would pay all his other creditors fifty cents on the dollar; and it was understood that he should endeavor to settle with them on that basis. He gave various creditors drafts on Redfield & Co., which were paid and credited on the note. After having given these drafts, and after deducting $61.86, the amount of his account with Redfield & Co., on January 4, 1886, there was a balance due on this note of $168.11, when he gave to his brother-in-law, A. J. Vaughn, who was a creditor, a draft on Redfield & Co. for this amount, which was paid, and the note was taken up.

On January 23, 1886, Redfield & Co. sold out the stock of drugs for $2201.41, part cash, the credit payment being secured.

On September 6, 1887, the bill in this case was filed by other creditors of Mallett, including Vaughn, to set aside the sale made April 15, 1885. Mallett and Redfield & Co. were made defendants. It alleged that complainants were creditors of Mallett to the amount of $1000, besides interest; that said sale was not made in good faith, but upon an understanding that Redfield & Co. were to take the goods, and, after paying from the proceeds of the sale thereof a debt of $706.95 to Odeneal, to return possession of the same to the said Mallett; that this was the only consideration of the transfer; that the goods were worth $3000, and that the object was to place the property out of the reach of Mallett's creditors, and to force complainants and other creditors to compromise their debts.

The bill made no allusion to the note for $400, given to Mallett

by Redfield & Co., and paid to creditors on the drafts of Mallett, as above stated. It was sworn to on information and belief by one of the complainants, who had no personal knowledge of the facts charged. *Pro confesso* was taken as to Mallett. Defendants, Redfield & Co., composed of C. G. Redfield and J. H. Odeneal, answered the bill under oath, positively and specifically denying all charges of fraud. They denied that the sale was made on any conditional understanding or agreement; denied that it was ever understood or agreed that Mallett should have the right to re-purchase or take back the goods, and averred that the sale was absolute, and made in good faith, for the consideration of $1106.95, as above set forth ; denied any purpose to coerce or compel creditors of Mallett to compromise their claims, and averred that if Mallett had any intention to defraud his creditors, they knew nothing of it. These defendants also denied that the goods were worth $3000, or anything like that sum, and averred that $1106.95 was a liberal price for the stock of drugs, which was old, with many unsaleable articles in it, and averred that they only bought the goods to enable Mallett to pay the debts to Odeneal and wife, which he could not otherwise do. They also set up that they assumed and paid these debts, and paid the note for $400, and finally, in due course, sold the stock of goods, without any knowledge or notice that other creditors could or would complain—the business having been finally closed out and settled nearly two years before the bill was filed.

Mallett, as a witness for complainants, testified substantially in support of the allegations of the bill. He stated that he had an agreement with the defendant, J. H. Odeneal, who lived in Jackson, about twenty-five miles from Edwards, to the effect that he, Mallett, was to have the right to take the goods back as soon as Redfield & Co. were reimbursed the amount advanced by them ; that other creditors were to be settled with at fifty cents on the dollar, and that an absolute bill of sale was made for the purpose of keeping off the other creditors; that he supposed Redfield & Co. would deal fairly with him, but that, after getting the goods and selling them at a profit, they had repudiated the agreement, offering him a small sum in compromise; that the stock consisted of fresh

goods in the main, though it contained the remnants of several stocks; that the stock invoiced about $3000, cost and carriage, and was worth about $2500. He stated that he offered to make an assignment to secure the Odeneal indebtedness, but that Odeneal insisted on a sale when the above arrangement was effected. He also testified that he first spoke to counsel for complainants about the suit, and read over and approved the bill before it was filed; that he meant no actual fraud, but supposed that his assets would pay all creditors; that the debts of complainants, amounting with interest to about $1400, were just and unpaid. There was other testimony for complainants tending to show that the value of the goods was considerably in excess of $1106.95. Mallett was not a druggist.

Defendant, Odeneal, as a witness denied making the conditional agreement testified to by Mallett, and stated that the sale was positive and absolute, as expressed in the written bill of sale; that Mallett proposed to make such conditional agreement, but that defendant consulted counsel, and, ascertaining that it would be illegal, positively refused to accede to it, and so wrote his partner and co-defendant, Redfield, who was at Edwards, asking that the letter be preserved. But Mallett did not discuss the terms of the sale with Redfield, and this letter was not shown to him. Defendant Odeneal further testified that Mallett was anxious to make an assignment, preferring his debt and that due Mrs. Odeneal for rent, but that he preferred a sale after obtaining legal advice; that he did not want the goods, and was anxious to get out of business at Edwards, and only consented to the purchase to enable Mallett to pay the debt. Both defendants as witnesses denied all fraud; denied that the sale was upon any condition whatever, but stated that it was absolute, open and fair for the consideration stated in the bill of sale, and that neither of them knew of any intention to defraud on the part of Mallett, if he had such intention. The testimony for the defendant further tended to show that $1106.95 was a fair price for the stock of drugs, and that the defendant, Redfield, at first refused to make the trade and pay over $1000 for the same. It was further shown that the invoice was

taken at the original cost price of the goods as marked, many of the articles having been bought several years before. Also that Mallett being embarrassed had bought at high prices, while defendants, having better credit, in replenishing the stock had bought on better terms; that the stock was put in good condition; that Redfield, who was an experienced merchant, gave his personal attention to the business, when not engaged in his general store, for the nine months they kept the stock, and that his services were worth $60 a month; that an advantageous sale was made of the stock for $2201.41, part on credit, to one Harris, who still owed for the goods, and whose bargain had not been profitable. Mallet was the only witness having personal knowledge of the facts attending the transfer who testified on behalf of complainants.

The court found that the goods when purchased by Redfield & Co., were of the value of $3000, set aside the sale, and entered a decree against said defendants, Redfield & Co., for the amount due complainants, as creditors of Mallett, aggregating $1453.57, besides all costs. From this decree the defendants, Redfield and Odeneal, appealed.

*Brame & Alexander,* for appellants.

1. The bill is sworn to upon information and belief by only one of the many complainants, who had no personal knowledge of the facts. The answer is upon positive knowledge, and denies under oath all the material allegations of the bill. Therefore two witness are required to overturn it. *Jacks* v. *Bridewell,* 51 Miss. 881; *Johnson* v. *Crippin,* 62 Ib. 597; *Toulme* v. *Clark,* 64 Ib. 471. The testimony of Mallett is inconsistent and contradictory, and does not sustain the decree.

2. The facts show that there was no fraud. Clearly there was none on the part of Redfield & Co. Odeneal had indulged Mallett until two years' rent was due, and then was reluctant to see him close up, and urged him to go on; but Mallett determined to quit, and made the sale.

There was no semblance of fraud in the arrangement to pay the note of $400. It was to go to creditors, and did go to them. If

there had been a purpose to defraud, the money would have been paid to Mallett. No matter that Mallett was to pay his other creditors only 50 cents on the dollar as far as this $400 would go, and he led Redfield & Co. to believe it would pay all. The money was left there subject to garnishment by any of his creditors. There was no concealment.

Redfield & Co. acted reasonably and fairly. They took legal advice, and were guilty of no fraud, actual or constructive. If Mallett thought he was to get the goods back, he was simply mistaken; this would not make fraud. 2 Pom. Eq., § 839.

When Mallett found that Redfield & Co. did not understand that he contemplated the right to repurchase, he should have then offered to rescind. 2 Pom. Eq., §§ 847, 897, 918. Wait on Fraud. Con., §§ 485, 487.

Odeneal had no motive to buy the goods, because Mallett offered to secure the debt by an assignment, and Redfield & Co. did not care to purchase. Odeneal wanted to get out of business at Edwards. He only bought the stock to enable Mallett to pay the debt.

3. If Mallett intended any fraud, it is clear that Redfield & Co. knew nothing of it. But mere knowledge is insufficient. Odeneal had the right to secure an honest debt, no matter what Mallett intended to do with the surplus paid him. *Hirsch* v. *Richardson,* 65 Miss. 227; 61 N. Y. 626; 58 Iowa, 591; 7 B. Mon. 361, 369. See specially *Covanhovan* v. *Hart,* 21 Pa. St. 500; *Hodges* v. *Coleman,* 76 Ala. 103.

The entire consideration went to creditors. It would make no difference if Mallett did have the right afterwards to buy back the goods. *Mobile Bank* v. *Tishomingo Sav. Inst.,* 62 Miss. 250. On this point see also *Mayer* v. *Shields,* 59 Miss. 107; *Craft* v. *Bloom,* Ib. 69.

4. The price was adequate. Redfield testifies that he considered $1000 the full cash value of the goods. Creditors cannot complain that these parties, by extra exertion and good management, made a profit in selling the goods after keeping them and taking all the risk and trouble incident to that business for nearly a year.

But mere inadequacy of consideration, if we concede the inadequacy, is no ground upon which to set aside a transfer. Especially is this true of an *executed contract.*

5. The court below set the sale aside entirely, and refused to uphold it even to the extent of the $1106.95 paid in good faith, *every dollar* of which went to creditors. Manifestly this was error.

To show that the court below did not properly understand and apply the facts, the decree finds the value of the goods to be $3000, whereas Mallett in the widest range of his testimony only places the value at $2500, which was double the value of the goods. He was trying for weeks to sell them, and the price Redfield & Co. paid was the very best he could get, and he had to follow them up for two weeks to induce them to purchase.

The decree should have been for defendants.

*Nugent & McWillie*, for appellees.

1. The *gravamen* of the bill in this case is that Mallett conveyed to Redfield & Co. his stock of drugs to hinder and delay complainants, his creditors, under an agreement that they were to hold the property until he could coerce creditors to compromise; that the transfer was for a grossly inadequate sum, the real consideration being as above stated; that Redfield & Co. subsequently refused to carry out their covinous agreement and sold the goods for a large sum, which they retained, against the rights of complainants.

2. Any act to hinder and delay creditors operates as a fraud on their rights. The *ultimate effect* of the transaction in question was to defraud creditors. Many of the circumstances shown in connection with this contrivance are such as are universally regarded as suspicious, and by some as conclusive of a fraudulent intent.

A written transfer was made and that is suspicious. Bump on Fraud. Con., p. 52.

The bill of sale falsely recites that the whole consideration was paid at the time of the transfer. Bump, 40, 42; Wait on Fraud. Con., § 228.

The mode of payment was unusual, and the transaction was out of the usual course. Bump, 50, 52; Wait, § 241.

The credit extended by Mallett was unusual.   He was insolvent, and his intent was to compel his creditors to wait, and coerce them into a compromise.   Bump, 47 ;  Wait, § 239.

The price was greatly inadequate.   On this point, see Bump, 43 ; Wait, § 319.

The trade was made entirely with Odeneal, and the understanding was that the bill of sale should be conditional.   Manifestly Mallett relied upon the agreement with Odeneal in turning over the store to Redfield & Co.   The letter from Odeneal telling Redfield to make no conditions was never shown to Mallett, yet it said "preserve this letter."   If it was so important as to require this injunction, and as it related to Mallett, why was it not shown to him ?   It was written for a purpose—to be preserved and shown to keep off Mallett's creditors.

Mallett's account of the transaction is reasonable and consistent, while that now offered by the defendants is anything else.   The assets were ample to pay Odeneal and all other creditors, and there was no occasion for Mallett to sell out on the terms stated, unless he had in view the purpose charged in the bill.

3. It will be noted that all the expenses were paid out of the business, and yet in less than a year the defendants sold it for double the amount named in the bill of sale.   It was an established business and ran itself.   Odeneal states that he wanted to help Mallett.   This agrees with Mallett's own statement that Odeneal was to help him secure a compromise.   Surely taking a $3000 stock of drugs at $1100 was not much help for Mallett.   The payment of such an inadequate consideration to one in Mallett's condition affords a *violent presumption of a secret trust,* and this sustains Mallett in his statement that there was such.

It is really a matter of doubt whether Redfield & Co. ever paid any part of the alleged consideration out of their own means.   It is possible that everything was paid out of the drug business.   If it be true that Odeneal was influenced by the trivial desire not to see the store vacated, that does not purge the transaction of the other motive which the law condemns.   Bump, 29.   If he had reason to suspect Mallett's motive, the transaction was void.   See

10 Am. Dec. 719; 18 Ib. 225; 26 Ib. 225; Bump on Fraud. Con., 26, 42, 43.

It is not denied that Mallett was trying to "get away with" his creditors by delaying them and forcing them to accept a compromise settlement, and Odeneal's own testimony shows that he was aware of the fact.

It is immaterial whether the minds of the parties met as to any particular agreement for a conditional sale. Their minds did meet in the effort to hinder and delay creditors; no dispute about that, and it is the main proposition. If the purpose is to hinder and delay creditors, it is not essential that the motive of the parties should be the same. Bump, 201, 202.

Argued orally by *L. Brame* and *C. H. Alexander* for appellants, and by *T. A. McWillie* for appellees.

CAMPBELL, J., delivered the opinion of the court.

This case is properly assignable to the middle class spoken of by the books, between actual fraud satisfactorily proved, and constructive fraud. It is a case of suspicious circumstances, as to the adequacy of the price paid for the goods and the fairness of the transaction as to creditors, and, therefore, should be set aside, but upon terms to do justice between the parties. Wait on Fraudulent Conveyances, 264; *Clement* v. *Moore*, 6 Wall., 299; *Boyd* v. *Dunlap*, 1 Johns. Ch., 478.

*Decree reversed and cause remanded, with directions to take an account of the value of the goods, and the debts of Mallett paid off by the defendants, Redfield & Co., etc.*